1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  JESUS TAPIA, an individual, | CASE NO. 15cv179-GPC(JLB) |
| 11                        Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE TO THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 12        vs. | |
| 13 | |
| 14 | |
| 15  DAVOL, INC., a corporation; BARD DEVICES, INC., a corporation; C.R. BARD, INC., a corporation, and DOES 1-50, | |
| 16 | |
| 17                        Defendants. | [Dkt. Nos. 35, 36.] |

18

19          Before the Court is Defendants Davol, Inc., Bard Devices, Inc. and C.R. Bard,

20  Inc.'s motion for judgment on the pleadings pursuant to Federal Rule of Civil

21  Procedure 12(c).  (Dkt. No. 35.)  Alternatively, Defendants also filed a motion to

22  transfer venue to the United States Bankruptcy Court for the Central District of

23  California.  (Dkt. No. 36.)  On May 12, 2016, the parties filed a joint motion to

24  continue the hearing date on the motions informing the Court that a conditional

25  settlement had been reached requiring approval of the bankruptcy trustee and the

26  Bankruptcy Court.[1]  (Dkt. No. 44 at 2.)

27
_____

28      [1]Around March 2016, it was discovered that Plaintiff had filed bankruptcy cases in the United States Bankruptcy Court for the Central District of California. (Dkt. No. 36-2, Buhr Decl. ¶ 5.)

1    Subsequently, Plaintiff Jesus Tapia ("Plaintiff") filed an opposition to

2 Defendants' motion for judgment on the pleadings but did not file an opposition to

3 Defendant's motion to transfer venue. (Dkt. No. 46.)  Due to a pending conditional

4 settlement, Defendants filed a reply requesting that the Court defer ruling on the

5 motion for judgment on the pleadings and transfer the case to the Bankruptcy Court for

6 the Central District of California. (Dkt. Nos. 47, 48.)  For the reasons stated below, the

7 Court GRANTS Defendants' motion to transfer venue and DENIES without prejudice

8 Defendants' motion for judgment on the pleadings.

9                                    **Background**

10    On January 27, 2015, Plaintiff filed a complaint against Defendants for personal

11 injuries suffered as a proximate result of Defendants' "negligent and wrongful conduct

12 in connection with the design, development, manufacture, testing, packaging,

13 promoting, marketing, distribution, labeling, sale, and/or post-market surveillance and

14 corrective action of the Bard Composix Kugel Hernia Repair Patch" ("Kugel Patch").

15 (Dkt. No. 1, Compl. ¶ 1.)  On August 14, 2015, Plaintiff filed the operative first

16 amended complaint ("FAC").  (Dkt. No. 19.)

17    Defendants manufactured and sold the Kugel Patch for use in repairing hernias.

18 (Id. ¶ 2.)  Around December 15, 2005, Plaintiff underwent a hernia repair procedure

19 during which the Kugel Patch was implanted.  (Id. ¶ 37.)  On or about January 27,

20 2013, Plaintiff was admitted to the emergency department at Menifee Valley Medical

21 Center. (Id. ¶ 39.)  He presented with redness and pain above his Kugel Patch surgical

22 site. (Id.)  He was diagnosed with abdominal wall mesh infection and abscess.  (Id.)

23 Around February 3, 2013, Plaintiff underwent emergency surgery to remove the Kugel

24 Patch. (Id. ¶ 40.)  During the removal procedure, it was noted that the plastic ring that

25 supported the Kugel Patch broke and caused an enterotomy which led to an infection.

26 (Id.)

27    Around October 8, 2012, Plaintiff filed for Chapter 13 bankruptcy in the United

28 States Bankruptcy Court for the Central District of California. (Dkt. No.  46-1, Tapia

1    Decl. ¶ 2.)  Because of his hospitalization and surgery due to the failure of the Kugel

2    Patch, around January/February 2013, Plaintiff missed several months of work and

3    incurred substantial medical bills.  (Id. ¶ 4.)  Around June 2013, Plaintiff notified his

4    bankruptcy attorney that he could not comply with the Chapter 13 bankruptcy payment

5    plan due to the financial hardship caused by injuries sustained by the Kugel Patch.  (Id.

6    ¶ 6.)  He notified the bankruptcy court of the reasons why he could not comply with the

7    payment plan and indicated he would be dismissing his Chapter 13 bankruptcy and

8    refiling a Chapter 7 bankruptcy case.  (Id. ¶ 7.)  Plaintiff states that he mistakenly did

9    not disclose the potential litigation because he did not know he had to.  (Id. ¶ 8.)

10          On July 25, 2013, Plaintiff filed for voluntary Chapter 7 bankruptcy in the

11   United States Bankruptcy Court for the Central District of California ("Central District

12   Bankruptcy Court").  (Dkt. No. 37, D' RJN, Ex. A.)  Plaintiff did not disclose his

13   potential personal injury claim during the pendency of his bankruptcy, which he

14   concedes.  (Id., Ex. A (July 2013 Bankruptcy Petition Schedule B); id., Ex. B

15   (Bankruptcy Docket listing no amendments to Schedule B); Dkt. No. 46-1, Tapia Decl.

16   ¶ 8.)  According to Plaintiff, at that time, it was not clear whether he could find an

17   attorney to take his case. (Dkt. No. 46-1, Tapia Decl. ¶¶ 5, 9.)  On November 4, 2013,

18   following the Trustee's determination that there were no assets available for

19   distribution, the Bankruptcy Court entered an order discharging Plaintiff's debts. (Dkt.

20   No. 37, D' RJN, Ex.  B.)

21          On January 27, 2015, Plaintiff filed the instant complaint in this Court.  After

22   two rounds of motions to dismiss, Defendants filed an answer on November 20, 2015.

23   (Dkt. No. 29.)  In preparation for Plaintiff's deposition on March 18, 2016, Defendants

24   discovered the bankruptcy proceedings.  (Dkt. No. 36-2, Buhr Decl. ¶ 5.)  At his

25   deposition, Plaintiff confirmed that he believed he was injured by the Kugel Patch

26   following his explant procedure in January 2013, but that he did not disclose his

27   potential claims against Bard to the Bankruptcy Court or the bankruptcy trustee.  (Id.

28   ¶ 7.)  On April 22, 2016, Plaintiff moved to have the bankruptcy re-opened, which was

[15cv179-GPC(JLB)]

1   granted on April 27, 2016.  (Dkt. No. 46-3, Brenes Decl. ¶¶ 10, 11.)

2        On April 6, 2016, Defendants filed their motions for judgment on the pleadings

3   and to transfer venue.  (Dkt. Nos. 35, 36.)  Defendants argue that because Plaintiff's

4   personal injury claim is now subject to proceedings in the United States Bankruptcy

5   Court for the Central District of California, Plaintiff lacks standing to pursue this case.

6   (Id.) On July 1, 2016, Plaintiff filed an opposition to Defendants' motion for judgment

7   on the pleadings but did not file an opposition to Defendants' motion to transfer venue.

8   (Dkt. No. 46.)  In his opposition, Plaintiff does not dispute that because of the pending

9   bankruptcy, the Trustee is the real party in interest for this litigation, not Plaintiff, and

10  seeks leave to amend the complaint to add the Trustee as the Plaintiff.  (Id. at 12-16.)

11  He also admits that he failed to disclose his potential personal injury claim as part of

12  his Chapter 7 bankruptcy, but his failure to list the personal injury claim was mistaken

13  or inadvertent and equitable estoppel should not apply.  (Id. at 16-21.)

14       Defendants filed replies to both motions.  (Dkt. Nos. 47, 48.)  In their replies,

15  Defendants request that the Court defer ruling on the motion for judgment on the

16  pleadings due to the conditional settlement, and transfer the case to the Central District

17  Bankruptcy Court so that all outstanding issues can be addressed.

18                              **Discussion**

19  **A.    Motion to Transfer Venue**

20       "For the convenience of parties and witnesses, in the interest of justice, a district

21  court may transfer any civil matter to any other district or division where it might have

22  been brought."  28 U.S.C. § 1404(a).  In addition, a "district court may transfer a case

23  or proceeding under title 11 [Bankruptcy Code] to a district court for another district,

24  in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412.

25  While these two provisions are very similar, "the former provision affords deference

26  to the plaintiff's choice of forum whereas the latter provision carries a presumption in

27  favor of the court in which the debtor's bankruptcy case is pending."  Reid-Ashman

28  Mfg., Inc. v. Swanson Semiconductor Serv., LLC, No. C-06-4693 JCS, 2008 WL

425638, at \*1 (N.D. Cal. Feb. 14, 2008).

It is clear that 28 U.S.C. § 1412 applies to "claims asserted directly against an estate" but while it is not so clear whether the section applies to claims that are "related" to the bankruptcy estate, the majority of courts have held that 28 U.S.C. § 1412 applies to related proceedings. Id. at \*1 (citing Hohl v. Bastian, 279 B.R. 165, 173 (W.D. Pa. 2002)).

Defendants argue, and Plaintiff does not dispute, that 28 U.S.C. § 1412 applies to this case and that this matter is "related to" the bankruptcy case in the Central District.

> (a) Except as provided in subsection (b) of this section, the district court have original and exclusive jurisdiction of all cases under title 11.
>
> (b) . . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under title 11*, or *arising in or related to* cases under title 11.

28 U.S.C. §§ 1334(a), (b) (emphasis added). A "proceeding arising under title 11 or *arising in or related to* a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409 (emphasis added).

In determining whether a case is "related to" a bankruptcy proceeding, the Third Circuit explained:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (internal citations and emphasis omitted) (overruled on other grounds by, Things Remembered, Inc. v. Petrar, 516 U.S. 124, 134-35 (1995)). The "related to" test announced by Pacor has been expressly approved by the Ninth Circuit. In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988) ("We reject any limitation on this definition; to the extent that other circuits may limit

1   jurisdiction where the <u>Pacor</u> decision would not, we stand by Pacor."); <u>Celotex Corp.</u>

2   <u>v. Edwards</u>, 514 U.S. 300, 308 n. 6 (1995) ("The First, Fourth, Fifth, Sixth, Eighth,

3   Ninth, Tenth, and Eleventh Circuits have adopted the <u>Pacor</u> test with little or no

4   variation.")

5       Here, because the Chapter 7 Trustee has sole and exclusive standing to pursue

6   Plaintiff's claim, this case is related to the Central District Bankruptcy case.  Moreover,

7   any judgment Plaintiff receives in the case will have an effect on the administration his

8   bankruptcy estate.

9       "Adjudication of a request for a transfer of venue under Section 1412 requires

10  a case-by-case analysis that is subject to the broad discretion of the court."  <u>TIG Ins.</u>

11  <u>Co. v. Smolker (In re TIG Ins. Co.)</u>, 264 B.R. 661, 668 (Bankr. C. D. Cal. 2001).  The

12  party seeking to transfer venue has the burden of showing by a preponderance of

13  evidence that transfer is warranted.  <u>Id.</u>  The "interests of justice" prong requires the

14  Court to consider the following factors:

15      the economics of estate administration, the presumption in favor of the
        "home court", judicial efficiency, the ability to receive a fair trial, the
16      state's interest in having local controversies decided within its borders
        by those familiar with its laws, the enforceability of the judgment, and
17      plaintiff's original choice of forum.

18  <u>SenoRx, Inc. v. Coudert Bros., LLP</u>, No. C-07-1075 SC, 2007 WL 2470125, at *1

19  (N.D. Cal. Aug. 27, 2007) (citing <u>In re Bruno's, Inc.</u>, 227 B.R. at 324-25 (S.D. Ala.

20  1998)).  "[T]he most important consideration is whether the requested transfer would

21  promote the economic and efficient administration of the estate."  <u>In re Commonwealth</u>

22  <u>Oil Refining Co., Inc.</u>, 596 F.2d 1239, 1247 (5th Cir. 1979).

23      The economics of estate administration weigh in favor of transfer.  If Plaintiff

24  prevails, the personal injury claim will have an effect on the administration of his

25  estate.  Moreover, the parties agree that the claims in this case belong with the

26  bankruptcy case and the Trustee is the only one who has standing to pursue this case.

27  The "home court" is the Central District Bankruptcy Court since Plaintiff voluntarily

28  filed his bankruptcy case there.  <u>See In re DRI Companies</u>, – B.R. –, 2016 WL

1  3574890, at *2 (Bankr. C.D. Cal. June 30, 2016) ("The 'home court' is the bankruptcy

2  court in which the debtor's case is pending").  Judicial efficiency will be served by

3  administering all claims in the same district, where the bankruptcy trustee is the sole

4  party with standing to prosecute this action, and as discussed below, the facts and

5  witnesses are all located in the Central District.  The ability to receive a fair trial and

6  the state's interest in having local controversies decided within its borders by those

7  familiar with its laws favors the Central District.  Any judgment in this case will be

8  enforceable in the Central District as the claims in this case constitute property of

9  Plaintiff's bankruptcy estate and the bankruptcy court has exclusive jurisdiction over

10  the property.  Lastly, Plaintiff voluntarily chose his forum by filing his voluntary

11  petition in the Central District Bankruptcy Court.  All these factors support transfer.

12        Even if transfer is sought in the interest of justice, the convenience of the parties

13  is also considered. In re Bruno, 277 B.R. at 325.  The court should consider the

14  location of the parties, ease of access to evidence, convenience of the witnesses,

15  availability of subpoena power for any unwilling witnesses and expense related to

16  obtaining witnesses. Id.

17        Here, while the Complaint states that Plaintiff lives in the County of San Diego.

18  (Dkt. No. 19, FAC ¶ 7), Plaintiff, in fact, has resided in Riverside County for the past

19  ten years which is located in the Central District.  (Dkt. No. 36-2, Buhr Decl. ¶ 7.)

20  Defendants have their principal place of business in New Jersey so the convenience

21  factor of trying the case in the Central District or the Southern District is neutral. (Dkt.

22  No. 19, FAC ¶¶ 8-10.)

23        The remaining four factors, ease of access to evidence, convenience of the

24  witnesses, availability of subpoena power for unwilling witnesses, and witness

25  expenses favor transfer. Plaintiff sought emergency care and treatment, and the explant

26  procedure relating to the Kugel Patch occurred at Menifee Valley Medical Center,

27  which is located in Riverside County. (Dkt. No. 19, FAC ¶ 39). Dr. Craig Owens,

28  M.D., the surgeon who explanted the Kugel Patch maintains a private practice in

[15cv179-GPC(JLB)]

1  Riverside County. (Dkt. No. 36-2, Buhr Decl. ¶ 11.) Dr. Richard C. Lam and Dr. Ravi

2  Shah are health care provides with discoverable information related to Plaintiff's

3  personal injury claims and both have private practices in Riverside County. (Id. ¶ 12.)

4  Since most all of the witnesses are located in the Central District, any witness

5  convenience, witness costs, access to discovery and subpoena power support transfer

6  to the Central District.  The Court concludes that the convenience of the parties weigh

7  in favor of transfer.

8         In sum, the Court concludes that Defendants have demonstrated that transferring

9  this action to the Central District of California is warranted and the Court GRANTS

10  Defendant's motion to transfer venue to the Bankruptcy Court for the Central District

11  of California.

12  **B.     Defendant's Motion for Judgment on the Pleadings**

13         Because this case will be transferred to the Bankruptcy Court for the Central

14  District of California, the Court DENIES Defendant's motion for judgment on the

15  pleadings without prejudice.  Plaintiff may refile the motion in the appropriate forum

16  after this case is transferred.

17                              **Conclusion**

18         Based on the above, the Court GRANTS Defendants' motion to transfer venue

19  to the United States Bankruptcy Court for the Central District of California by

20  automatic referral of the District Court for the Central District pursuant to C.D. General

21  Order No. 13-05.[2]  In addition, the Court DENIES Defendant's motion for judgment

22  / / / /

23  / / / /

24  / / / /

25

26         [2]The United States District Court for the Central District of California's General
Order No. 13-05 effects the automatic referral of "all proceedings arising under Title
27  11 or arising in or related to a case under Title 11" to bankruptcy judges in the Central
District.
28  See   https://www.cacd.uscourts.gov/sites/default/files/general-orders/GO-13-05.pdf
(last visited July 19, 2016).

on the pleadings without prejudice to refiling in the transferred venue.  The hearing set for July 29, 2016 shall be **vacated**.

IT IS SO ORDERED.

DATED:  July 21, 2016

HON. GONZALO P. CURIEL
United States District Judge

[15cv179-GPC(JLB)]